UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Mohammad Mahmoud Atiyat,                     Case No. 21-32555
      Debtor.                                                    Chapter 7

## MEMORANDUM OPINION AND ORDER

Mohammad Mahmoud Atiyat (the "Debtor") filed a voluntary petition in this Court under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301-1330, on August 19, 2021. The case was converted to Chapter 7 on May 27, 2022. On May 1, 2024, the Chapter 7 trustee (the "Trustee") moved for authority to sell real property of the estate located at 8307 Ferdinand Lane, Midlothian, Virginia, by private sale, pursuant to § 363 of the Bankruptcy Code, 11 U.S.C. § 363 (the "Sale Motion"). The Debtor objected to the Sale Motion. No other parties have objected to the proposed sale. A hearing on the Sale Motion was held on May 29, 2024, at which the Court instructed the parties to submit memoranda addressing the issue of the Debtor's standing to object to the Sale Motion. The parties have done so, and the question of the Debtor's standing, along with the Sale Motion, is now before the Court.

### History of the Case

The Debtor filed his Chapter 13 plan (the "Plan") on September 2, 2021. Dkt. 14. The Chapter 13 trustee objected to confirmation of the Plan, as did NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and one other creditor, Mohammad Tabanjeh. In her objection, the Chapter 13 trustee requested additional income information from the Debtor. Dkt. 19. Shellpoint, whose claim was secured by the Property, argued that the mortgage arrearage owed to it was understated in

1

the Plan and payment of the correct higher arrearage would make the Plan unfeasible. Dkt. 21. Mohammad Tabanjeh urged that, among other things, the Debtor had not fully disclosed his assets, including real estate owned in the Kingdom of Jordan. Dkt. 20. These objections were sustained by agreement, and the Court denied confirmation of the Plan on November 3, 2021. Dkt. 27.

The Debtor submitted an amended plan (the "Amended Plan") on November 23, 2021. Dkt. 29. Mohammad Tabanjeh, along with two other creditors (collectively, the "Tabanjeh Creditors"), objected to the confirmation of the Amended Plan. Dkt. 34. The objection was unopposed and was sustained by the Court. Dkt. 35. An order denying confirmation of the Amended Plan was entered on January 12, 2022. Dkt. 36.

On January 18, 2022, the Chapter 13 Trustee filed a motion to convert the Debtor's case to chapter 7, Dkt. 38, as did the Tabanjeh Creditors, Dkt. 40 (jointly "the Conversion Motions"). Both the Chapter 13 Trustee and the Tabanjeh Creditors alleged bad faith on the part of the Debtor by demonstrating that he had presented false information both in his schedules and in testimony at his § 341 meeting of creditors, particularly his failure to disclose his interest in real property he owned in the Kingdom of Jordan. The Debtor objected to the Conversion Motions, and after several continuances, a hearing was held on May 25, 2022, at which the Court granted the Conversion Motions. An order converting the case to Chapter 7 was entered on May 27, 2022. Dkt. 66.

2

On July 22, 2022, the Trustee filed a report stating she had determined that the Debtor had assets available for liquidation for the benefit of creditors and requested the Clerk to notify creditors to file proofs of claim in the case. Dkt. 90. On July 24, 2022, the Clerk notified creditors to file proofs of claim and set October 24, 2022, as the deadline by which nongovernmental creditors should file proofs of claim. Dkt. 94. A post-deadline review of the claims register reveals timely-filed claims totaling $397,822.29, of which $170,953.62 represents the secured Shellpoint mortgage claim. All other claims were filed as unsecured claims.

On August 18, 2022, the United States Trustee filed a motion to approve the Debtor's voluntary waiver of his discharge. Dkt. 100. That motion was granted at a hearing held September 14, 2022, Dkt. 111, and an order was entered on September 16, 2022, denying the Debtor a discharge in this case.[1] Dkt. 112.

On November 8, 2022, the Trustee filed a motion requesting authority to conduct an examination of the Debtor pursuant to Rule 2004 of the Bankruptcy Rules, Fed. R. Bankr. P. 2004 (the "2004 Motion"), after the Debtor's failure to produce requested documentation. Dkt. 120. In the 2004 Motion, the Trustee also requested that the Debtor be required to vacate the property located at 8307 Ferdinand Lane, Midlothian, Virginia (the "Property") so the Trustee could administer it for the benefit of creditors. The parties submitted a consent order resolving the 2004 Motion, which was entered on the docket on November 30, 2022

---

[1] On December 6, 2021, the Tabanjeh Creditors filed an adversary proceeding seeking a finding of that the debts allegedly owed to them by the Debtor are nondischargeable, relying on § 523(a)(2) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2). That adversary proceeding was voluntarily dismissed on September 17, 2022, after the Debtor's waiver of discharge. Adv. Pro. No. 21-03123-KLP.

3

(the "Consent Order"). Dkt. 125. In that order, the Debtor agreed to provide the Trustee with the documents she was seeking and agreed to give the Trustee access to the Property to facilitate listing it for sale.

The docket reflects that after the entry of the Consent Order, the Debtor's § 341 meeting of creditors was adjourned six times. Dkt. 126-33. The last notice of adjournment was filed on April 25, 2023. On that same day, the Trustee filed a motion to compel (the "Motion to Compel") the Debtor to comply with the terms of the Consent Order. Dkt. 134.

A hearing on the Motion to Compel was held on May 10, 2023. By order signed May 25, 2023, the Court ordered the Debtor to provide the documents requested by the Trustee and to vacate the Property by May 30, 2023. In addition, the Court imposed a sanction of $4,862.00 because of the Debtor's bad faith and willful failure to abide by the terms of the Court's orders. Dkt. 141.

On May 8, 2023, Shellpoint filed a motion for relief from the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362 (the "Motion for Relief"), seeking authority to foreclose upon the Property.. Dkt. 136. On August 29, 2023, the Debtor filed a tardy response to the Motion for Relief, stating that he has no objection to the Court's granting relief from the automatic stay, which would permit Shellpoint to proceed with a foreclosure sale under state law.[2] Dkt. 144. No order has been submitted on the Motion for Relief.

---

[2] Interestingly, the Debtor apparently has no objection to a forced sale of the Property by the mortgage holder, yet he opposes a sale by the Trustee that similarly disposes of the Property but, unlike most foreclosure sales, would generate proceeds for the benefit of estate creditors.

On May 1, 2024, the Trustee filed the Sale Motion. The Debtor filed his objection thereto on May 2, 2024. Dkt. 160. After a hearing held May 29, 2024, the Trustee filed a motion to strike the Debtor's objection to the Sale Motion (the "Motion to Strike"), Dkt. 167, challenging the standing of the Debtor. The Debtor filed his response,[3] Dkt. 168, and the matter of the Debtor's standing to oppose the Sale Motion is now before the Court.

<u>Discussion</u>

*Jurisdiction*. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A),(E),(N).

*Facts*. The record before the Court includes various statements submitted under oath by the Debtor, representations and admissions included in pleadings and unopposed proofs of claim, and other docket entries.

The Property is presently owned by the Debtor and his brother, Ashrat Atiyat, as joint tenants with right of survivorship. They are jointly indebted to Shellpoint pursuant to a note executed January 17, 2007 (the "Note"). On that same day, the brothers executed a deed of trust to secure payment of the Note (the "Deed of Trust"). Shellpoint filed a secured proof of claim in this case in the amount of $170,953.62 on September 15, 2021. Claim #3. The proof of claim asserts that the

---

[3] The Court finds that the Motion to Strike and the response thereto satisfy the Court's request for memoranda addressing the Debtor's standing.

entire amount is secured by the Property; the Note and the Deed of Trust are attached to the claim.

In the Motion for Relief, Shellpoint alleged that the amount owed to it was $187,935.88 as of April 13, 2023. A payoff letter attached to the Motion for Relief breaks down the payoff as of April 13, 2023, including $146,224.57 of principal, interest of $9,817.08, $11,339.39 in deferred principal, and $12,495.51 in deferred interest, plus any applicable late charges and attorney's fees and costs. The Court notes that the Debtor stated that he does not oppose the Motion for Relief, nor has he contested the accuracy of Shellpoint's payoff figure. Dkt. 144. There having been no objection to Shellpoint's proof of claim, it is deemed allowed.[4]

Attachment D to the Motion for Relief shows that the assessed value of the Property in 2023 was $295,000. In amended schedules filed November 23, 2021, under penalty of perjury, the Debtor valued the Property at $290,300 (his interest being one half of that amount) and valued his total assets at $249,484. Dkt. 30. The purchase price at which the Trustee seeks to sell the Property is $220,000. Dkt. 161. The Trustee alleges that the co-owner of the Property, Ashrat Atiyat, has consented to the proposed sale.

The Trustee asserts that Shellpoint has agreed to a carveout from its distribution (the "Carveout"), as set forth in the Sale Motion:

> Shellpoint has agreed to the terms of the sale outlined in this Motion. Specifically, Shellpoint has agreed to a carve out of its share of the net proceeds . . . to be paid to the Trustee for the

---

[4] Pursuant to 11 U.S.C. § 502(a) "[a] claim . . . is deemed allowed, unless a party in interest . . . objects."

benefit of the Estate in the total amount of the value of its lien exceeding $183,500. The proceeds from the Carve Out will ensure the Trustee is able to make a distribution to unsecured creditors in this case.

Sale Motion ¶ 18.

The Trustee lists the liens on the Property as of November 29, 2023, as:

a. A deed of trust dated January 17, 2007, granted by the Debtor and Ahmad Atiyat to Countrywide Home Loans, Inc. and thereafter assigned to NewRez LLC d/b/a/ Shellpoint Mortgage Servicing ("Shellpoint") to secure payment of a promissory note in the face amount of $204,202.00 plus interest in the amount of 6.5%;

b. A water/sewer lien docketed on December 4, 2009, in favor of the Chesterfield County Utilities Department ("Chesterfield") in the amount of $40.95;

c. A judgment docketed against Ahmad Atiyat on December 6, 2010, in favor of Discover Bank ("Discover") in the amount of $12,938.45 plus 6% interest and $82 in costs and attorneys' fees;

d. A judgment docketed against Ahmad Atiyat on March 15, 2012, in favor of Jormandy LLC ("Jormandy") in the amount of $4,870.19 plus 6% interest and $54 in costs and attorneys' fees;

e. A judgment docketed against Ashrat Al-Atiyat on March 15, 2012, in favor of Midland Funding LLC ("Midland" and collectively with Discover and Jormandy, the "Subordinate Lienholders") in the amount of $624.18 plus 6% interest rate and $56 in costs and attorneys' fees; and

f. A judgment in favor of the Trustee in the amount of $4,862 based on the *Order Granting Motion to Compel* entered on May 25, 2023 [Docket No. 141] for sanctions that this Court imposed on the Debtor due to his willful failure to abide by the terms of prior court orders.

Sale Motion ¶ 11. The Debtor has also asserted a $25,000 homestead exemption in

the Property. Dkt. 30, Schedule C. There was no timely objection to the Debtor's

7

exemption claim; thus, it is now deemed allowed.[5] The Trustee proposes to

distribute the proceeds of the sale as follows:

> a. The first deed of trust of Shellpoint in the amount of $183,500;
> b. The lien in favor of Chesterfield;
> c. Taxes and usual closing costs; and
> d. Any remaining proceeds less the Carve Out to be held in escrow
> by counsel for the Trustee to afford the Debtor an opportunity to
> bring an action pursuant to § 522(f) of the Bankruptcy Code.
> . . . The Trustee further seeks authority to retain the Carve Out
> free and clear of all liens, claims, and interests to distribute to the
> Estate pursuant to the Bankruptcy Code and further order of this
> Court.

Sale Motion, ¶¶ 27, 28. Determining the amount that would be available for

unsecured creditors based upon this language is not presently possible, as the Court

has no evidence of the total anticipated payoff of the Shellpoint claim and no

evidence of the "taxes and usual closing costs" anticipated in finalizing the sale.

Importantly, the Trustee does not propose to distribute any of the proceeds to the

Debtor on account of his $25,000 exemption.[6]

In connection with the Sale Motion, the Debtor has propounded

interrogatories and requests for production of documents (the "Discovery Requests")

to the Trustee. The Trustee has filed a motion to strike the Discovery Requests,

Dkt. 171, arguing that if the Debtor has no standing to pursue his objection to the

Sale Motion, he has no basis upon which to request discovery in relation thereto.

---

[5] Bankruptcy Rule 4003(b)(1), Fed. R. Bankr. P. 4003(b)(1).

[6] It appears that the Trustee anticipates that the Debtor will undertake an action to avoid one or
more judgment liens pursuant to 11 U.S.C. § 522(f) and has represented that should the Debtor
decline to do so, she will pursue the avoidance actions in his stead.  Whether the Trustee would be a
proper party to bring this action is currently not before the Court.  Nevertheless, avoidance of the
judgment liens to deliver clear title to the purchaser adds an additional complication that will need
to be resolved should the Court approve the Sale Motion.

The Discovery Requests fall into three categories: (1) information related to the value of the Property, (2) information related to the amount of the liens on the Property, and (3) information relevant to the $220,000 purchase contract on the Property.-

Hearings on the Discovery Requests and the Sale Motion have been continued pending the Court's ruling on the Debtor's standing to oppose the sale. A hearing on the Motion for Relief is currently scheduled for October 23, 2024.

*Analysis.* Before considering the merits of the Sale Motion, the Court must determine whether the Debtor, the sole objecting party, has standing to assert his objection. Unless surplus funds exist after fully paying all creditors, a debtor will ordinarily receive no distribution from the bankruptcy estate, *see* 11 U.S.C. § 726(a) (providing the order of distribution of property of the estate). In most chapter 7 cases, there are insufficient assets available to pay creditors in full, leaving a debtor with no pecuniary interest in estate proceeds. This appears to be the case here. However, in this instance, the Debtor asserts that he is entitled to recover the amount of his homestead exemption from the Carveout that the Trustee has negotiated with Shellpoint, should the Court approve the sale.

In support of her Motion to Strike, the Trustee cites the Fourth Circuit case of *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985). In *Willemain*, the Fourth Circuit confirmed the rulings of the lower courts that the chapter 7 debtor had no standing to object to the trustee's sale of his interest in a limited partnership whose sole asset was one piece of real estate because "an insolvent debtor is not a party in

interest and thus lacks standing because he has no pecuniary interest in the
distribution of his assets among his creditors." *Id*. at 1022.[7] The court found that to
establish standing, a debtor must "demonstrate that an alternative sale of the
interest would return solvency to his estate." *Id*. Further, the court noted that even
when a debtor can present evidence of fair market value exceeding the proposed
sale price, "[a] favorable appraisal without a corresponding actual purchaser cannot
be allowed to stymie a bankruptcy court as it attempts to decide expeditiously
matters before it." *Id*. at 1023, n.7. *Willemain* continues be followed in the Fourth
Circuit. *See In re Miller*, RWT 10cv2466, 2011 WL 3758712, at *4 (D. Md. Aug. 24,
2011) (to establish standing, debtor must show a direct, pecuniary benefit from a
proposed trustee's sale of property); *accord Dandridge v. Scott*, Civil Action No.
3:18CV00051, 2019 WL 4228457, at *1 (W.D. Va. Sept. 5, 2019); *Hoy v. Atkeson*, No.
3:15-cv-04860-MGL, 2016 WL 3162177, at *4 (D.S.C. June 6, 2016).

   In the Debtor's case, the evidence most favorable to his position that the
value of the Property exceeds the proposed sale price does not support a finding that
the Debtor has a direct, pecuniary interest in the sale of the Property because even
if the Property were sold for a price equal to the Debtor's valuation, the sale would
not return the estate to solvency. With total claims filed in the case being
$397,822.29, and the Property apparently being the only asset available for
liquidation, there can be no benefit to the Debtor unless the Debtor's share of the

---

[7] Alternatively, the Fourth Circuit held that even if the debtor had standing, his objection was moot
because the transfer had already been finalized by sale to a good faith purchaser. *Willemain v.
Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985).

bankruptcy estate's sale proceeds exceeds that amount, at a minimum. The
Trustee's sale proposes to limit Shellpoint's distribution to $183,500, with a
Carveout that would enable the Trustee to make some partial distributions to
administrative and unsecured creditors. This would still leave no excess for
distribution to the Debtor, nor would it return the Debtor to solvency. The Debtor
has not alleged that an alternative sale for a higher price is available, but even if
the Property were to be sold for its assessed amount, or for the value asserted by
the Debtor under penalty of perjury in his schedules, it would not generate a
surplus for the Debtor.

In opposition to the Motion to Strike, the Debtor argues that this Court's
analysis in the 2004 case of *In re Silver*, 338 B.R. 277 (Bankr. E.D. Va. 2004)
supports a finding that he has standing to object to the sale. In *Silver*, the Court
recognized its longstanding policy of not allowing a trustee's sale of assets when the
proposed sale would benefit only secured creditors. The Debtor argues that that
policy should apply here as "[e]ven with the carveout, the sale will not pay all liens,
administrative costs and the payment of any unsecured claims."

However, *Silver* does not stand for the proposition that proceeds of a proposed
sale must pay *all* liens, administrative costs, and unsecured claims. Rather, the
Court in that case focused on this Court's "standing policy of refusing to allow the
sale of assets of a chapter 7 bankruptcy estate solely for the benefit of secured
creditors." *Id*. at 281. While the opinion in *Silver* doesn't explicitly mention
standing, the refusal of the Court to prohibit sales of estate property solely for the

11

benefit of secured creditors mirrors the "pecuniary interest" test of *Willemain*. In

this case, the Sale Motion proposes a transaction that will pay some, but not all,

administrative and unsecured creditors' claims. The Trustee posits that her

proposed sale terms, in particular Shellpoint's agreement to compromise its secured

claim, will result in some payment to unsecured creditors and satisfy *Silver's* and

*Willemain's* solvency requirement.[8]

The Debtor further argues that the Fourth Circuit's ruling in *Willemain* was

influenced by the fact that a sale of the subject property to a good faith purchaser

had already been completed, thus making the appeal moot. However, prior to

making that ruling, the court specifically found that "Willemain has . . . failed to

demonstrate that an alternative sale of the interest would return solvency to his

estate and he, accordingly, lacks standing to bring this appeal." 764 F.2d at 1023.

Either basis for its ruling, mootness or standing, would have independently sufficed

to deny standing to the debtor.

The total scheduled value of the Debtor's assets is $249,484, an amount based

on the Debtor's own valuations submitted under penalty of perjury. The total

amount of debts as documented by the allowed proofs of claim filed in this case,

$397,822.29, greatly exceeds the value of estate assets. Consequently, the

bankruptcy estate has been and continues to be insolvent. If Shellpoint were

granted relief from the automatic stay to proceed with a foreclosure sale, based on

---

[8] As Shellpoint's claim was $187,935.88 in April 2023, an amount not disputed by the Debtor, even if
that amount has remained the same, the Carve Out of any amounts over $183,500 would likely
result in proceeds being available for distribution to unsecured creditors and would certainly benefit
more than the creditors whose claims are secured by the Property.

the evidence currently in the record and absent a carveout to the estate, there would likely be no remaining proceeds after distribution to lienholders available to the bankruptcy estate or the Debtor. Neither party has submitted evidence to the contrary.

The Trustee, in the exercise of her duties, has negotiated a transaction by which unsecured creditors may receive at least some distribution. Generally, the Debtor would have no grounds upon which to interfere with the Trustee's attempt to make a partial distribution to unsecured creditors in an insolvent case. That approach was outlined in the case of *McGuirl v. White*, 86 F.3d 1232 (D.D.C. 1996), which contains an in-depth discussion of the issue. The court explained:

> *Willemain's* holding that only solvent debtors have standing in the bankruptcy court parallels a similar rule that limits standing to appeal bankruptcy court orders to a "person aggrieved." Like the "party in interest" requirement, the "person aggrieved" standard derives from a former provision of the bankruptcy code. *See* 11 U.S.C. § 67(c) (1976) (repealed 1978). Persons aggrieved are those "whose rights or interests are 'directly and adversely affected pecuniarily' by the order or decree of the bankruptcy court." *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987) (quoting *In Re Fondiller*, 707 F.2d 441, 442 (9th Cir.1983)). Because estates pass on to a trustee in bankruptcy and because bankruptcy proceedings absolve debtors of any liability to creditors, debtors generally lack standing to appeal orders of the bankruptcy court. *See San Juan Hotel*, 809 F.2d at 154-55. **Only debtors who will have a surplus in their estate after the termination of bankruptcy proceedings have appellate standing.** *See id*. at 155 n. 6; *see also Depoister v. Mary M. Holloway Found*., 36 F.3d 582, 585 (7th Cir.1994). Even though the current version of the bankruptcy code no longer expressly limits appellate review to a "person aggrieved," *see* Bankruptcy Act, Pub.L. 95-598, tit. I, § 101, 92 Stat. 2549 (1978), courts continue to so limit standing to appeal, recognizing that to do otherwise might overwhelm bankruptcy courts with claims by the many parties indirectly affected by bankruptcy court orders.

13

86 F.3d at 1234-35 (emphasis added).[9]

Applying the analysis above, the Debtor would have no standing to object to the sale of the Property, even with the Carveout. However, here the Court must also address the question of whether the Debtor is entitled to claim his homestead exemption in the Carveout despite the insolvent status of the case and the lack of equity in the Property. As previously stated, the Debtor argues that he in fact does have a pecuniary interest in the outcome of the sale because he has a homestead exemption in the Property. Specifically, the Debtor has an allowed $25,000 homestead exemption pursuant to Va. Code § 34-4.[10]

Cases interpreting the homestead exemption contained in the Bankruptcy Code, 11 U.S.C. § 522(d)(1), have held that for a debtor to claim an exemption in real property the debtor uses as a primary residence, there must be equity in the property to which the claimed exemption can attach. *See In re Messina*, 687 F.3d 74, 82 (3d Cir. 2012) ("There was no equity in the property to exempt at the time Appellants filed for bankruptcy, because the combination of the two mortgages was greater than the value of the exemption itself."). Here, given the value of the Debtor's interest in the Property and the amount of the liens on the Property, there

---

[9] The Debtor also asserts that the analysis set forth by the Trustee does not include the value of the real property he owns in the Kingdom of Jordan (the "Jordan Property"). In his schedules, he values the Jordan Property at $88,226. The Jordan Property consists of three parcels, one of which is owned jointly with his brother. The Debtor's $88,226 valuation of the Jordan Property is included in the total value of assets that the Trustee used to determine whether the Debtor is solvent, and the Debtor has presented no evidence to the contrary. Thus, the argument that the Trustee has not addressed the disposition of the Jordan Property must fail.

[10] Virginia has opted out of the exemption schedule listed in § 522(d) of the Bankruptcy Code, 11 U.S.C. § 522(d), and the Virginia homestead exemption is contained in Va. Code Ann. § 34-4.

is no equity to which a homestead exemption could have attached at the time the case was filed.

Courts are divided, however, on whether a debtor is entitled to assert his homestead exemption in a Trustee-negotiated carveout from a secured creditor's lien. A 2020 article in the Bankruptcy Law Letter addressed the conundrum of carveout vs. exemption in depth and summarized efforts of the courts to resolve it. *See* Ralph Brubaker, *Short Sales, Mortgagee Give-up, and the Debtor's Homestead Exemption: Taking Bankruptcy's Priority Rules Seriously*, 40 No. 11 Bankr. L. Letter NL 1 (2020). Professor Brubaker's lengthy scholarly article addresses the concerns surrounding the issue, especially in light of the 2020 decision of *In re Stark*, 2020 WL 5778400 (Bankr. E.D.N.Y. 2020), and its subsequent reversal by the district court in *Stark v. Pryor (In re Stark)*, 20-CV-4766(EK), 2022 WL 2316176 (E.D.N.Y. 2022).

In *Stark*, the chapter 7 trustee sought court approval to sell the debtor's primary residence. The residence was fully encumbered, with no equity remaining for distribution to unsecured creditors. The facts in *Stark* are almost identical to those in this case. The mortgagee had agreed to accept a payment that was lower than the amount of its secured claim, thus giving the Trustee some funds to pay administrative expenses and to make a distribution to unsecured creditors. The trustee asserted that he had statutory authority to enter into such an agreement and that the sale proceeds were not subject to the Debtor's homestead exemption. The amount of the carveout was undetermined at the time of the motion because

15

the Trustee had been unable to gain access to the residence to get a current

valuation. The Debtor argued that before any distribution of any sale proceeds to

unsecured creditors, her claimed exemption must be paid.

Accepting the trustee's argument, the bankruptcy court ruled that new funds

made available from the carveout arose "not from any equity in the Property but

from an agreement essentially monetizing the Trustee's power under the Code to

dispose of the Property utilizing the section 363 process." 2020 WL 5778400, at *7.

The court concluded that the carved-out funds were not properly characterized as

proceeds of the sale of real property, but rather were "attributable to the rights and

powers of the trustee granted to him under the Code and exercised by him for the

benefit of the estate. Thus, the Debtor [could not] lay claim to those funds on

account of the homestead exemption." *Id*. at *5.

On appeal, the district court reversed the bankruptcy court's decision. In

doing so, it relied upon its interpretation of the New York exemption statute's

requirement of "value" in the property.[11] The court stated that:

> [T]he correct answer, in my view, is that in exchange for the carve-out,
> the Trustee is delivering the sale of the Property outside a foreclosure
> proceeding. Said differently, the Trustee is trading away, in exchange
> for the carve-out, Stark's right to remain in the Property for an extended
> period without making mortgage payments; her right to exclude others
> during that period; and the like.
>   Having described the "value" at issue as such, it is clear that the
> value resides in the homeowner's "property" rights in the house, and is
> thus protected by the homestead exemption. . . . At the end of the day,
> the Trustee is monetizing part of the value of "a lot of land with a

---

[11] New York, having opted out of the Bankruptcy Code's exemptions, as has Virginia, gives a debtor
an exemption of "up to $170,825 in value above liens and encumbrances." N.Y. C.P.L.R. § 5206(a);
N.Y. Debt. & Cred. Law § 282.

dwelling thereon" that is "owned and occupied as a principal residence."
And that value is exempted by the New York homestead exemption
statute."

*Id*. at **5-6.[12]

The district court also addressed an argument often used in decisions

approving a trustee's sale of property. That argument posits that the debtor had no

exemption in property subject to a carveout because there was no equity in the

property at the time the petition was filed. The district court rejected that

argument, finding that "the secured creditor's agreement to accept less money upon

a sale creates equity in the home where none existed before." *Id*. at *6.

Other courts holding that a trustee may effectuate a carveout agreement that

pays unsecured creditors without first honoring the debtor's homestead exemption

have articulated additional reasons for their decisions. In *Jubber v. Bird (In re*

*Bird)*, 577 B.R. 365 (B.A.P. 10th Cir. 2017), the court noted that such agreements

circumvent the statutory distribution scheme of the Bankruptcy Code .

We . . . agree with Appellants' position that the Supreme Court's recent
decision in *Czyzewski v. Jevic Holding Corp.*, ⸺ U.S. ⸺, 137 S.Ct.

---

[12] The Bankruptcy Code's homestead exemption also relies on the value of the debtor in property:
> (d) The following property may be exempted under subsection (b)(2) of this section:
> (1) The debtor's aggregate interest, not to exceed $27,900 [originally "$15,000",
> adjusted effective April 1, 2022][1] in value, in real property or personal property that
> the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns
> property that the debtor or a dependent of the debtor uses as a residence, or in a burial
> plot for the debtor or a dependent of the debtor.

11 U.S.C. § 522(d)(1). In addition, the homestead exemption created by Va. Code § 34-4 relies
on the value of the debtor in property:
> Every householder shall be entitled, in addition to the property or estate exempt
> under §§ 23.1-707, 34-26, 34-27, 34-29, and 64.2-311, to hold exempt from creditor
> process arising out of a debt, real and personal property, or either, to be selected by
> the householder, including money and debts due the householder not exceeding
> $5,000 in value . . . .

Va. Code § 34-4.

> 973, 197 L.Ed.2d 398 (2017), which reversed a bankruptcy court's approval of a structured dismissal in a Chapter 11 case, does not prohibit all carve out agreements. But Appellants miss the larger point applicable here: *Jevic* stands for the proposition that neither the parties, nor the courts, are free to circumvent the Bankruptcy Code's rules and policies regarding priorities and distributions through manipulation of substantive and procedural protections. *Jevic*, 137 S.Ct. at 986–87.

577 B.R. 379, n.64. *See also Summerlin v. Turnage*, 648 B.R. 793 (W.D.N.C. 2023);

Brubaker, text accompanying nn.112, 113.[13]

The court in *Bird* further supported its decision by referring to the Supreme Court's ruling in *Law v. Siegel*, 571 U.S. 415 (2014), that exemptions can be denied only on the statutory bases set forth in the Bankruptcy Code. This "underscores the sacrosanct nature of homestead exemptions." 577 B.R. at 386. In *Siegel*, the

---

[13] "What makes modern 'gifting' practices objectionable and illegitimate, therefore, . . . is they are *not* restricted in their operation to creditors simply paying (or agreeing to pay) to some other claimant or class of claimants the *distributions* those "gifting" creditors have *already received* from the debtor's bankruptcy estate, *after* those distributions are made in accordance with the Code's distribution priorities (and at which point those funds are no longer property of the estate). Rather, the agreement requires (because the foregoing will not do the trick for one reason or another) a *bankruptcy court order* that authorizes a *direct distribution of estate property* that implements the so-called distribution sharing agreement, which distribution does *not* comply with the Code's priority rules for distribution of estate property.

The short-sale give-up agreements between undersecured creditors and Chapter 7 trustees that cut out any exemption claim by the debtor are fundamentally objectionable and illegitimate for precisely the same reason. Restricting the operation of those agreements to the secured creditor simply agreeing to pay the trustee an agreed amount *after* distribution of *all* 363 sales proceeds to the secured creditor, in accordance with the Code's distribution priorities, is a nonstarter: The bankruptcy court cannot and will not approve a 363 sale that will only produce a distribution to an undersecured creditor and, therefore, will order abandonment. Moreover, the trustee has no authority to seek, receive, or administer such a payment of non-estate property to the trustee. Consequently, the short-sale give-up agreement must require the bankruptcy court to enter an order authorizing a direct distribution of the 363 sale proceeds by the trustee in accordance with the terms of the give-up agreement. But that distribution contravenes the Code's prescribed distribution priorities for the proceeds of an asset in which the debtor has an exempt interest, which give the debtor's exemption claim priority over the claims of unsecured creditors." Brubaker, text accompanying nn.112, 113.

Supreme Court ruled that § 522(k)'s prohibition that "[p]roperty that the debtor exempts under this section is not liable for payment of any administrative expenses" protects exempt property from being liable for payment of ordinary administrative expenses, and even a debtor's fraud does not constitute cause to deny his homestead exemption to pay administrative expenses incurred by the trustee because of that fraud. 571 U.S. at 422. In *Bird*, the Tenth Circuit Bankruptcy Appellate Panel applied *Law v. Siegel* when holding that the "Trustee's scheme to sell the Homesteads by negotiating Carve–Outs . . . is nothing more than an attempt to do indirectly what the Bankruptcy Code and Utah exemption statutes prevent him from doing directly." 577 B.R. at 386.

In this post-*Siegel* and *Jevic* landscape, the Court must side with those courts that prioritize a debtor's homestead exemptions, whether as prescribed in the Bankruptcy Code or in the statutes of those states that have opted out of the Bankruptcy Code's exemptions. A trustee's carveout agreement with a secured creditor should not subvert those exemptions, which were enacted to aid debtors in their fresh start after bankruptcy. *See Turnage*, 648 B.R. at 799. There is nothing in the Bankruptcy Code that supports denying a debtor's exemption in his homestead when a carveout agreement with a secured creditor is the source of unencumbered funds that are available to apply to the exemption.

Having found that the Debtor has a pecuniary interest, by virtue of an exemption that he may legitimately assert, in the funds that would result from the consummation of the sale and the Carveout, it stands to reason that he has

19

standing to advance his objection to the Sale Motion.[14] Therefore,  the Court finds that the Debtor has standing to object to the Sale Motion and will deny the Motion to Strike the Debtor's response. For the same reasons, the Court will deny the Trustee's "Motion to Strike the Interrogatories and Requests for Production of Documents," as it is based solely on the Debtor's alleged lack of standing.

The Sale Motion remains before the Court. An evidentiary hearing on that motion will be heard contemporaneously with Shellpoint's hearing on its Motion for Relief scheduled for October 23, 2024. At that hearing, the Court will expect the Trustee to present evidence that the sale will result in a "meaningful distribution to creditors." *See* USDOJ Handbook for Chapter 7 Trustees, at 4-14 ("the Trustee may seek a 'carve-out' from a secured creditor and sell the property at issue if the 'carve-out' will result in a meaningful distribution to creditors."). The current insufficiency of evidence regarding the anticipated recovery for benefit of creditors in this case prevents the Court from making such a determination.[15]

Therefore, in accordance with the opinion set forth above,

IT IS ORDERED that the October 9, 2024, evidentiary hearing originally scheduled for the Sale Motion will be held on October 23, 2024; and it is further

---

[14] The court in *McGuirl* concurred with the position taken by many courts that "[o]nly debtors who will have a surplus in their estate after the termination of bankruptcy proceedings have . . . standing." 86 F.3d at 1234. Nonetheless, the court held that in that case that the debtors, who were not entitled to a discharge, had standing to object to the trustee's $20,000 fee, reasoning that an "excessive award will reduce funds otherwise available to pay creditors to whom the [debtors] will remain directly liable." 86 F.3d at 1236. As this would adversely impact the debtors' post-discharge liability on their nondischargeable debts, the court found that they had standing despite the insolvent nature of the estate. Applying this analysis, the discharge waiver made by the Debtor in this case also provides him standing to oppose the sale.

[15] For example, the Court has no evidence as to potential administrative costs in the case nor the current payoff to Shellpoint.

ORDERED that the Motion to Strike the Debtor's objection to the Sale

Motion is DENIED; and it is further

ORDERED that the Motion to Strike the Discovery Requests is DENIED.

Signed: <u>October 11 , 2024</u>

<u>      /s/ Keith L. Phillips      </u>
United States Bankruptcy Judge

Copies to:                                ENTERED ON DOCKET: Oct. 11, 2024

Mohammad Mahmoud Atiyat
8307 Ferdinand Ln
Midlothian, VA 23112-1545

James H. Wilson, Jr.
4860 Cox Road, Suite 200
Glen Allen, VA 23060

Kollin Geoffrey Bender
Hirschler Fleischer, P.C.
2100 East Cary Street
P.O. Box 500
Richmond, VA 23218-0500

Jennifer J. West
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA 23219

Shannon Pecoraro
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219